THE STATE, DEFENDANT IN ERROR, v. WILLIAM H. ELLIOTT, JUNIOR, PLAINTIFF IN ERROR.

Submitted December 4, 1919—Decided April 9, 1920.

1. The rule of law concerning contributory negligence by the injured person as a defence in a civil action for damages for personal injuries, is not applicable to a prosecution for manslaughter as the result of negligence.

2. In weighing the evidence, the jury may exercise their own judgment and discrimination, based upon their personal experience as men of affairs, in applying the general rules of law to the details of a concrete proposition for the purpose of reaching a conclusion based upon the law and the evidence.

On error to Essex County Court of Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices BLACK and MINTURN.

For the plaintiff in error, *Alfred A. Stein.*

For the state, *J. Henry Harrison* and *Leslie Price.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff in error was indicted and convicted of manslaughter, for causing the death of Sidney Aarons, on Broad street, Newark, at about two o'clock in the morning of February 2d, 1919. Broad street is the most traveled street in the city of Newark, and a police officer in the locality seeing the defendant's car, a high power Packard, approaching at forty miles an hour, watched it, and shortly after it had passed him, he saw a human body "fly in the air," and approaching it as it lay in the centre of the street, caused its removal to the city hospital, where when life was found to be extinct it was identified as the body of Aarons. The operator of the colliding car, unmindful of the collision, sped away at a high rate of speed with its lights out so that immediate identification of the vehicle became impossible. A car answering the description of the car in question, driven by this defendant, was halted in Elizabeth by a police officer shortly after two o'clock the same morning. The left mudguard of the car was bent, and at the trial testimony of an adequate character was adduced regarding identification of the men in the car, as well as the general contour of the car itself, from which a jury might reasonably infer that the car in question was the same instrumentality which caused the homicide.

The case is before us upon assignments of error, as well as upon the entire record specifying causes for reversal, based upon alleged trial errors, as well as upon alleged misdirections contained in the charge of the court, and the refusal of the court to charge certain requests. Our examination of the record has led us to conclude that the alleged errors complained of are without substance, and do not warrant a reversal of the conviction. In some respects only do we find it necessary to enlarge upon this general conclusion, and discuss more *in extenso* the general doctrine of liability upon which the indictment is predicated. No question is made that if the defendant was operating his car at the dangerous speed of forty miles an hour upon a city street, he was engaged in a violation of the law. The gravamen of the proof inhered in the effort of the state to identify the car, and after the state had offered in evidence the *indicia* of identification upon which it relied, the defendant attempted to meet it, *inter alia,* by proof of his reputation for prudence and carefulness, in the operation of a car.

The trial court charged as required by our adjudication, upon that subject, when he directed the jury to consider the good character and reputation of the defendant, and to acquit him if such evidence was sufficient to raise a reasonable doubt of his guilt.

The testimony of this character adduced by defendant related to his reputation for prudence and carefulness, and the minds of the jury could not have been misled by the general language of the charge in that respect. *Baher* v. *State,* 53 N. J. L. 45.

The main insistence, however, was the direction of the court that the contributory negligence of the deceased, if it existed, could not present a defence to the defendant's act of malfeasance, and such testimony was excluded.

The trend of judicial authority supports the ruling. It is laid down generally as a rule deducible from the cases that "The rule of law concerning contributory negligence by the injured person as a defence in a civil action for damages for

personal injuries is not applicable to a prosecution for manslaughter as the result of negligence." 13 *R. C. L.* 750.

The same general principle is laid down in 21 *Cyc.* 766. The leading American cases bearing upon the subject are *State* v. *Campbell,* 82 *Conn.* 671; 18 *Ann. Cas.* 236, and *Schultz* v. *State,* 89 *Neb.* 34; *Ann. Cas.* 1912C. 495, and annotations.

The fundamental and specific inquiry is not whether some other person was negligent, but whether the defendant was violating the specific injunction of the law at the time of the homicide.

Persons of varying degrees of capacity, mentally and physically, may at the time be in the exercise of their lawful right of attempting to cross the street. They have a right to assume that the vehicles which they may encounter in their passage will be operated in accordance with the requirements of the law, and not in reckless violation and disregard of its provisions. The complete answer therefore to a criminal charge of this character is that the vehicle was operated within the requirements of the law. Any other defence based upon the incapacity or imbecility of the injured person to foresee the danger and avoid its consequences has its place in an action of tort, but is immaterial in a prosecution based upon a willful infraction of the criminal law.

The identification of the car and its driver, under the circumstances was almost necessarily circumstantial, but the rule is indubitable that such testimony may present a case sufficiently cogent and connected to go to the jury and afford the basis for a verdict. *State* v. *Young,* 56 *Atl. Rep.* 471; *Manziano* v. *Public Service Co.,* 92 *N. J. L.* 322.

It is finally argued that the trial court allowed the jury to draw upon their own experience in dealing with the credibility of the witnesses by charging that in considering the weight of the testimony, they might take into consideration those general characteristics incidental to verbal proof such as demeanor, mental capacity, the general probabilities, inconsistencies or contradictions, "and such other considerations that may be evolved from experience or which the jury may

deem proper under the circumstances," and exception was entered to this direction. The contention is based upon the acknowledged rule of law that the jury must be limited in the consideration of their verdict to the testimony in the case. *DeGray* v. *New York and New Jersey Tel. Co.*, 68 N. J. L. 454.

The jury had been instructed earlier, and indeed throughout the charge, so that no misapprehension could arise regarding the general scope of their duty, and the application of legal rules in their application to that duty, that their verdict must be predicated upon the evidence, and in dealing with the situation we must consider not the isolated direction under review, but the entire charge as correlated to it, tested by its practical application to the facts of the case. *State* v. *Cerciello,* 86 N. J. L. 309; *State* v. *Rombolo,* 91 *Id.* 560.

In the *DeGray case, supra,* the jury were instructed that if they thought fit, they might substitute their own knowledge and experience concerning the facts in evidence for the sworn testimony of witnesses.

In the case of *Michigan Central Railroad* v. *Vreeland,* 227 U. S. 422, the situation was similar, for there the jury were instructed to estimate a widow's financial loss in a compensation case "from their own experience as men."

In both of these cases a reversal resulted because obviously the jury in effect were directed to ignore the substantive testimony in the cases and substitute for it their own judgment of value. But in the case at bar the direction of the court was simply tantamount to an instruction, that in weighing the evidence they were to exercise their own judgment and discrimination, based upon their personal experience as men of affairs, in applying the general rules of law to the details of a concrete proposition for the purpose of reaching a conclusion, based upon the law and the evidence. To this mental operation manifestly there can be no substantial objection, since such a process of analytical reasoning is assumed as the basis upon which courts as well as juries reach their conclusions. Courts take judicial notice of the ordinary affairs of life, as well as of the deductions manifested by human ex-

perience in applying the rules of law to a concrete factual situation; and jurors are expected to reach their judgments in like manner, otherwise nothing in human experience could be accepted as a basis for the deductive processes of reasoning based upon probabilities, or human experience which is the method necessarily resorted to in reaching all human judgments; or as Professor Greenleaf states the doctrine, "Proof rests in our faith in human veracity, sanctioned by experience." 1 *Greenl.* 16; *Manziano* v. *Public Service Gas. Co., ubi supra;* 11 *R. C. L.* 565, and cases.

In the case of *State* v. *Runyon,* 93 *N. J. L.* 16, this court, dealing with the same subject regarding a charge of the court substantially similar to that in the case *sub judice,* stated, "Its meaning as it seems to us, is that the jury might use their own experience in considering the credit to be given to the testimony of a witness; that they might consider not only the matters specifically mentioned, but any other matters which would constitute a proper test under the circumstances of the case." Verdicts of juries and judgments of courts are necessarily sanctioned by such a test.

Finding no error in the record, the judgment under review will be affirmed.