[Crim. No. 1355. Second Appellate District, Division Two.—December 9, 1926.]

THE PEOPLE, Respondent, v. WILLIAM R. McKEE, Appellant.

[1] CRIMINAL LAW — KILLING OF PEDESTRIAN — FAILURE TO RENDER ASSISTANCE—DUAL PROSECUTION.—Where the driver of an automobile upon a public highway runs into and kills a person and then fails to stop and render assistance, he may be prosecuted upon a charge of manslaughter and also for violating section 141 of the Motor Vehicle Act (Stats. 1923, p. 517), requiring a person upon the happening of an accident to stop, give his name and address, and render such assistance as is necessary, as the acts constituting such second offense do not commence until after said person has been struck, at which time the first offense has been completed.

[2] ID.—KILLING OF PEDESTRIAN—DUTY OF AUTOMOBILE DRIVER TO RENDER ASSISTANCE.—The fact that said person was killed instantly, or was dead at least by the time bystanders reached her, did not absolve the driver of the death-dealing automobile from the duty of stopping and rendering such assistance as would comply with the respect due from one human to another who has passed beyond the veil of materiality.

[3] ID.—IDENTITY OF DRIVER—INSTRUCTIONS.—In the prosecution of an automobile driver on a charge of manslaughter, an instruction, "If you are satisfied to a moral certainty, and beyond a reasonable doubt that the deceased came to her death by being struck by an automobile driven upon a public highway at the time charged in this information, and that said machine was being driven in an unlawful manner, . . . you should find the defendant guilty of manslaughter," is not open to the objection that it permits a conviction without requiring that defendant was the driver, where, in another instruction given at the request of defendant, the jury is told that it is necessary for the prosecution to prove beyond a reasonable doubt "that the defendant, and no other person, committed the crime charged."

[4] ID.—UNDER INFLUENCE OF INTOXICATING LIQUORS—DEFINITION— INSTRUCTIONS.—The words "under the influence of intoxicating

---

1. Manslaughter in connection with use of automobile, notes, 30 A. L. R. 66; 41 A. L. R. 725; 42 A. L. R. 1120.

2. See 3 Cal. Jur. 1011 and Supplement.

4. See 3 Cal. Jur. 1009 and Supplement.

liquors" have a well-understood meaning, and, as used in the Motor Vehicle Act, refer to that degree of influence which looses the bonds of self-restraint and causes the driver to operate his car in a manner different from that which it would be operated by an ordinarily cautious and prudent person; and where those words are used in an instruction, and defendant does not request a more specific instruction, it will be assumed that the jury understood such common usage.

[5] ID.—CONTRIBUTORY NEGLIGENCE AS DEFENSE—INSTRUCTIONS.—In a prosecution on a charge of manslaughter and also for violating section 141 of the Motor Vehicle Act, requiring a person upon the happening of an accident to stop, give his name and address, and render such assistance as is necessary, the jury is properly instructed that contributory negligence of the deceased is no defense, and must be disregarded.

[6] ID. — UNLAWFUL RATE OF SPEED — EVIDENCE—INSTRUCTIONS.—In such prosecution, the defendant is not prejudiced by the giving of an instruction in which the court refers to "an unlawful rate of speed," without telling the jury what constitutes such rate of speed, where the jury is told that the vehicle must be operated "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway," and at a speed so as not "to endanger the life, limb or property of any person," and the evidence shows that defendant was driving in excess of thirty-five miles per hour, upon his approach to an intersection and while driving to the left of the center of the road in an attempt to pass two other vehicles.

[7] ID.—KNOWLEDGE OF STRIKING DECEASED—INSTRUCTIONS.—In such prosecution, where the evidence was such that it was inconceivable that the jury could have believed that defendant struck the deceased with such force as to instantly kill her and not have known that he had struck something, unless they also believed that he was so badly intoxicated that his senses were stupefied, defendant was not prejudiced by the giving of an instruction defining the essentials of the offense of violating section 141 of the Motor Vehicle Act, but which failed to state that it was necessary for defendant to have knowledge of the striking of the deceased.

[8] ID. — INDIVIDUAL OPINION OF JURORS — INSTRUCTIONS. — In such prosecution, the refusal of the court to instruct the jury that defendant was entitled to the individual opinion of the jurors

8.   See 8 **Cal. Jur.** 374.

was not prejudicial error, although such an instruction should have been given.

---

(1) 16 C. J., p. 274, n. 42 New; 42 C. J., p. 1386, n. 47, 48.    (2) 42 C. J., p. 1385, n. 41, p. 1387, n. 72.    (3) 16 C. J., p. 1053, n. 93; 42 C. J., p. 1364, n. 2.    (4) 17 C. J., p. 225, n. 67; 42 C. J., p. 1331, n. 60, p. 1355, n. 41, p. 1363, n. 92.    (5) 16 C. J., p. 1053, n. 93; 42 C. J., p. 1355, n. 46, p. 1357, n. 78.    (6) 17 C. J., p. 343, n. 13; 42 C. J., p. 1355, n. 45.    (7) 16 C. J., p. 1063, n. 85; 42 C. J., p. 1388, n. 87.    (8) 17 C. J., p. 351, n. 29.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fred H. Thompson for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

THOMPSON, J.—This appeal is from a judgment of conviction of the defendant upon a charge of manslaughter and also a violation of section 141 of the Motor Vehicle Act (Stats. 1923, p. 517), requiring a person upon the happening of an accident to stop, give his name and address to the person struck, and render such assistance as is necessary.

The facts show that after an all-night affair at a bungalow near Seal Beach, where the defendant drank some liquor, he was driving home on Compton Avenue at Forty-seventh Street in Los Angeles City at about the hour of 6:40 A. M. on November 4, 1925; that upon arriving at the intersection he was driving a little to the left of the center of the road in an effort to pass two other automobiles in front of which Mrs. Fleming had just passed, and in so doing struck and instantly killed her. The speed of the defendant's car was estimated by plaintiff's witnesses at somewhere between forty and fifty miles an hour, by one of the defendant's witnesses as between thirty-five and forty, concerning which fact the defendant said, "I might have been going faster than thirty-five." A partly filled bottle of synthetic gin was found in the car and later in

the morning the defendant was unable to talk coherently. It was overwhelmingly established and not denied that the defendant did not stop after striking the woman, his defense in this particular being that he did not know he had hit the woman, although several of the witnesses testified that he did, and that immediately thereafter he swerved, started to slow down and then proceeded to increase his speed.

[1] The first point urged by appellant is that the defendant was twice placed in jeopardy for the same offense, maintaining as the foundation for this argument that the transaction upon which the two offenses are based is but a single one. Violation of section 141 of the Motor Vehicle Act is not included within or in fact related to the offense of manslaughter. There is a sort of illicit relationship between burglary and larceny, and yet they are not so wedded that a conviction cannot be had for both, although both of them grow out of the same continuous set of acts. (*People* v. *Devlin,* 143 Cal. 128 [76 Pac. 900]; *People* v. *Snyder,* 74 Cal. App. 138 [239 Pac. 705]; *People* v. *Case et al.,* 77 Cal. App. 477 [246 Pac. 1083]; and *People* v. *Brain,* 75 Cal. App. 109 [241 Pac. 913].) It cannot therefore be successfully argued that the defendant here was twice put in jeopardy. The acts constituting the second offense did not really commence until after the woman had been struck, at which time the first offense had been completed. This same circumstance is involved and considered in the connection between burglary and larceny, or robbery. (*People* v. *Brain, supra.*)

[2] The second contention advanced by the defendant is that the evidence is not sufficient to support the verdict on the second count—that of failing to stop and render all necessary aid to Mrs. Fleming after she was struck. The insufficiency, he says, consists of this: that the evidence establishes that she was instantly killed and therefore no assistance was possible. The testimony does establish that Mrs. Fleming was dead at least by the time the bystanders reached her. We cannot admit, however, even for the purpose of argument, that there was no assistance to be rendered. Certainly decency and common respect dictate that mutilated humans should not be allowed to lie around in the street as mute evidence of the destruction wrought by

speed. There was at least such assistance to be rendered as would comply with the respect due from one human to another who has passed beyond the veil of materiality. Let us, however, temporarily grant the argument; nevertheless, as was pointed out in *People* v. *Huber*, 64 Cal. App. 352 [221 Pac. 695], it was the defendant's duty under any view of the situation to stop his machine and stand ready to comply with the various provisions of the law, regardless of whether or not the person struck was sufficiently injured to require assistance or so seriously injured that assistance was no longer necessary to her material well-being. He made no attempt to comply and he certainly cannot be heard to say that he is guilty of no offense because the woman was killed instead of injured. Justice would indeed be "blind" and deaf and dumb to heed such specious arguments.

[3] Appellant next assigns as error the following instruction: "If you are satisfied to a moral certainty, and beyond a reasonable doubt that the deceased came to her death by being struck by an automobile driven upon a public highway at the time charged in this information, and that said machine was being driven in an unlawful manner, to wit, while the driver was under the influence of intoxicating liquor, or while the machine was being operated at an unlawful rate of speed, or while said machine was being driven upon a public highway at such a rate of speed as to endanger life, limb or property of any person, you should find the defendant guilty of manslaughter." He says that it permitted the jury to convict "if Mrs. Fleming was killed by being struck by 'an automobile' driven in an unlawful manner without being required to find that defendant was the driver." A complete answer to this is that part of another instruction requested by the defendant and given by the court wherein the jury were told that it was necessary for the prosecution to prove beyond a reasonable doubt "that the defendant, and no other person, committed the crime charged."

[4] He also assails this instruction for its use of the words "under the influence of intoxicating liquors." These are the words used in the act, and as so used we think they have a well-understood meaning. They are followed by the provision that "an habitual user of narcotic drugs shall

not drive a motor vehicle." This provision indicates, it seems to us, that "under the influence of intoxicating liquors" means what common usage has ascribed to the word, to wit, not that he should be intoxicated to the extent that his faculties are completely impaired, but only that degree of influence which looses the bonds of self-restraint and causes him to operate his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person. (*People* v. *Dingle*, 56 Cal. App. 445 [205 Pac. 705].) Be that as it may, however, it must be assumed at least in the absence of a request by the defendant for a more specific instruction that the jury understood this common usage. We cannot believe that any prejudicial error resulted from permitting the jury to accept the common understanding of the words. (*People* v. *Ekstromer*, 71 Cal. App. 239 [235 Pac. 69].)

[5] Appellant's next assault upon this instruction is based upon his contention that the jury were permitted by it to find the defendant guilty, though the intoxication was not the proximate cause of the accident. The jury were told in other instructions that the gross or culpable negligence or the operation of the machine with a reckless disregard for the safety of others must be the cause of death, and instruction No. 14 stated to them that death must proximately result from such operation. Taken as a whole, we think they correctly stated the law in this particular. However, relating to this point, appellant urges that the instruction permitted the jury to disregard the contributory negligence of the deceased. They were told, and correctly so, in another instruction that it was no defense. As was said in *State* v. *Moore*, 129 Iowa, 514 [106 N. W. 16], "It is enough to say that contributory negligence, if shown, is never a defense or excuse for crime, nor can it in any degree serve to purge an act otherwise constituting a public offense of its criminal character." (See, also, *State* v. *Elliott*, 94 N. J. L. 76 [110 Atl. 135], and cases therein cited.)

[6] Complaint is also made of this instruction because the jury were not told what constituted "an unlawful rate of speed." The lawful rate of speed is not thirty-five miles an hour even on the country boulevard. The thirty-five miles an hour for which he contends is limited by the

fact, as the jury were told, that the vehicle must be operated "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway," and at a speed so as not "to endanger the life, limb or property of any person." The jury could not possibly have found in this case under any proper instruction that the automobile was operated at a careful and prudent speed, having due regard to the traffic. He was driving in excess of thirty-five miles, according to his own admission, upon his approach to the intersection and while driving to the left of the center of the road in an attempt to pass two other vehicles. Probably the best mental picture of the situation is seen in the fact that to at least two witnesses the noise he made and his rate of speed gave the appearance of a police car. Under these circumstances, defendant could not have been prejudiced by a failure to more fully define the lawful rate of speed.

[7] The defendant asserts that the instructions given by the court defining the essentials of the offense of violating section 141 of the Motor Vehicle Act is faulty in this: That they failed to state that it was necessary for the defendant to have knowledge of the striking of Mrs. Fleming. It is inconceivable that the jury could have believed that defendant struck the deceased with such force as to instantly kill her and not have known that he had struck something, unless they also believed that he was so badly intoxicated that his senses were stupefied. Under these circumstances we cannot see how the defendant was prejudiced. But the case of People v. Graves, 74 Cal. App. 415 [240 Pac. 1019], cited by appellant, is conclusive against him in this regard. In that case the court instructed the jury that "The duty imposed upon a driver of an automobile which strikes a person to stop, render assistance, and furnish the information required by the law is a duty which he must perform in all cases, and it is immaterial whether such accident was caused by the carelessness of such driver, the carelessness of the person struck, or of both, or was an unavoidable accident. Such duty arises whenever such a collision occurs." It will be noted that the court in this case used the words "in all cases" and also says that the duty arises whenever such a collision

occurs. It is therefore broader than the instruction here complained of, and yet the court says: "If we conceded that the instruction is susceptible of the construction claimed for it by appellant, we are unable to believe that the jury so construed it or based their verdict upon any such construction."

In a sort of an omnibus bill, the appellant urges that the refusal of the court to give a number of instructions requested by him constitutes error. We have examined each of them with care and can find no prejudicial error. The jury was instructed as to the presumption of innocence; given the law concerning the means to test the credibility of witnesses; told that they could not convict unless it was the defendant and no other person who struck Mrs. Fleming; the question of intent to violate section 141 of the Motor Vehicle Act has already been dealt with; what appellant calls the "general hypothesis of innocence" was covered by the court in its instructions upon innocence and reasonable doubt, which instructions covered all that was necessary against prejudice from the fact of accusation. [8] The refusal to instruct that the defendant was entitled to the individual opinion of the jurors was not prejudicial error, although this court and the supreme court have heretofore admonished the trial courts that such an instruction should be given. (*People* v. *Singh,* 20 Cal. App. 146 [128 Pac. 420], and cases therein cited.)

Judgment affirmed.

Works, P. J., and Craig, J., concurred.