[Civ. No. 2054. Fourth Appellate District.—June 9, 1938.]

DORIS LINNEA ERICKSON, Appellant, v. ELDON LEE VOGT, Respondent.

Sloane & Steiner and John W. Holler for Appellant.

Arthur F. H. Wright for Respondent.

HAINES, J., *pro tem.*—On the evening of January 19, 1937, appellant accompanied respondent to a dance at Bostonia, about 15 miles east of San Diego. They were on their way back to San Diego somewhat after midnight, that is in the early morning of January 20th, in an automobile which re-

spondent drove, and in which appellant was riding as his guest, at a speed of from thirty to thirty-two miles per hour, when respondent dozed off to such an extent that the automobile scraped the curb. He says that he had not previously felt sleepy. He claims to have spoken to appellant thereafter in order to make sure that he should not fall asleep again, though he says that he did not think he would be likely to do so. However, he did in fact doze off again, whereupon the car which he had been driving struck a pole, and the damage for which appellant here sues resulted. Both parties had done some drinking in the course of the evening. Respondent testified that after the first dance, "we sat at the bar; I ordered a bottle of beer which I drank, not in a hurry. During the evening we kept on dancing most of the time. I also had a mixed drink in between." He thinks that was about ten or ten thirty. The mixed drink "was some drink with gin in it; they have ready prepared drinks there; I tried one of those; I am not sure whether it was a gin fizz or a Tom Collins; I rather think it was one of them, in fact I know it was". He testified that he had a second bottle of beer about half an hour before leaving for town. Finally he concluded that what he had referred to as beer was really ale. The bottles that contained it were pint bottles. A police officer who saw respondent at about 1:55 A. M. at the east San Diego police station testified that respondent showed no signs of intoxication and that he noticed on him no smell of liquor. Appellant says that at the time respondent had the first bottle of ale she had a bottle of beer; that later he ordered a whiskey sour for her which she tasted but did not like, whereupon he drank it. She thinks he had a drink or two of gin in the course of the evening, also that he ordered and drank some ale just before they left. She had herself dozed off more or less on the road home, was awakened from a doze at the time the car scraped the curb, but was wide awake when the collision with the pole occurred.

The court at the close of the evidence instructed the jury to find a verdict for respondent, and this having been done, judgment was entered accordingly and this appeal followed.

Appellant claims that, though she was undoubtedly respondent's guest, the case presented was one in which the jury should have been allowed to pass on the question of willful misconduct on the part of respondent driver and on the further question as to whether respondent was not driving while under the influence of liquor.

Under the provisions of section 403 of the Vehicle Code, as in force at the time of this accident, appellant, having been a guest of respondent, could have no cause of action against him for her injuries unless they proximately resulted from his "intoxication or willful misconduct".

The first contention, in appellant's behalf, is that willful misconduct appears from the circumstance that, after once having fallen asleep, respondent nevertheless continued to drive and thereby took the risk of falling asleep again. In that connection we are cited to the definition of willful misconduct given in *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622, 626 [25 Pac. (2d) 988], which is that:

"Willful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result."

This definition is adopted as a satisfactory one in *Meek* v. *Fowler*, 3 Cal. (2d) 420, 425 [45 Pac. (2d) 194], and in *Weber* v. *Pinyan*, 9 Cal. (2d) 226, 232, 233 [70 Pac. (2d) 183].

Our attention has been called to three cases from other jurisdictions in which a driver's continuing to drive after having reason to know that there was danger of his falling asleep has been held to have been more than ordinary negligence. One of these is *Potz* v. *Williams*, 113 Conn. 278 [155 Atl. 211], a guest case, wherein the statute required the plaintiff as a prerequisite to recovery to prove "reckless misconduct", and such continued driving after warning of the danger of falling asleep was held sufficient proof of it. The second of these cases is *Freedman* v. *Hurwitz*, 116 Conn. 283 [164 Atl. 647], where in like circumstances a similar result was reached. The third case is *Manser* v. *Eder*, 263 Mich. 107 [248 N. W. 563], where, as in the instant case, the driver after having once fallen asleep had insisted on continuing to drive and fallen asleep again, with a resulting accident. Under the Michigan statute it would have been sufficient to warrant a recovery for the plaintiff, the guest, to have shown either gross negligence or willful and wanton misconduct on the part of the driver. The court held that by reason of the defendant's insistence on driving after being warned of his drowsy condi-

tion and narrow escape from one accident, the trial court was justified in holding that he had evinced a "reckless disregard for the consequences of an obvious danger" such as amounted to "willful and wanton misconduct".

The three cases last cited are not, of course, binding upon us, and the Connecticut guest statute does not use the words "willful misconduct", but uses instead the expression "reckless misconduct", but the latter expression can hardly mean less than a conscious disregard for manifest danger. It is, of course, true that in *Weir* v. *Lukes,* 13 Cal. App. (2d) 312 [56 Pac. (2d) 987], quoting from *Helme* v. *Great Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510], it was said that willful misconduct "means something different from and more than negligence, however gross", and also that "to constitute willful misconduct there must be actual knowledge of that which in the law is esteemed to be the equivalent of actual knowledge of the peril to be apprehended from the failure to act coupled with the conscious failure to act to the end of averting injury".

It is also true that in *Forsman* v. *Colton,* 136 Cal. App. 97 [28 Pac. (2d) 429], the court quoted with approval *Kaplan* v. *Kaplan,* 213 Iowa, 646 [239 N. W. 682], in which it was *inter alia* held that the circumstance that a person while driving along the highway is involuntarily overcome by sleep does not make him guilty of the reckless operation of the automobile within the meaning of the law. So, too, it was said in *Rode* v. *Roberts,* 11 Cal. App. (2d) 638, 642 [54 Pac. (2d) 498], that even though the defendant had been driving the car while drowsy "such fact might indicate negligence, but not willful misconduct".

The facts involved in the case at bar are, on the other hand, distinguishable from the situation just referred to, in that, as in *Manser* v. *Eder, supra,* where the defendant, having fallen asleep just escaped hitting a safety zone, so here respondent having once dozed off and been awakened by scraping the curb, the jury might properly have believed that he had his attention sufficiently called to the dangers incident to his drowsy condition. Such a conclusion might be further fortified by the circumstance that he admittedly talked to appellant in order to be sure that he kept awake. As was stated by this court in *Wright* v. *Sellers,* 25 Cal. App. (2d) 603 [78 Pac. (2d) 209] :

"On the one hand are numerous cases in which the appellate and supreme courts found no difficulty in holding that the acts of a driver of an automobile constituted willful misconduct. On the other hand are an equal, if not a greater number of cases where the acts relied on were held, as a matter of law, not to constitute willful misconduct. Between these two fairly well defined zones of decision appears another class composed of what may be called border line cases."

In our opinion the instant case so far as the question of willful misconduct is concerned is an example of the border line cases just referred to, and as further said in the decision last cited:

"In this class of cases, frequently, though not always, it has been held that the question of the existence of willful misconduct is one of fact addressed to the trier of fact and not one of law for the appellate court."

As was again said in *Wright* v. *Sellers* (p. 146), with respect to the matter of proof:

"It is sufficient if the act, or the failure to act, be done or omitted under such circumstances as would justify the reasonable inference that the driver should have known that injury to his guest was a probable result, for again, positive evidentiary proof of such knowledge would be an impossibility in most cases."

In the circumstances we think that the question whether respondent was or was not guilty of willful misconduct was in the instant case one of fact for the jury, rather than of law for the court.

██ Not only, however, would it have sufficed, in order to make a case to the jury, for appellant to have adduced enough evidence to require the jury to pass on the question of respondent's willful misconduct, but it was also appellant's contention that respondent was driving while intoxicated. We think the circumstances such that this question, too, ought to have been left to the jury. As said in *People* v. *McKee*, 80 Cal. App. 200, 205 [251 Pac. 675]:

" 'Under the influence of intoxicating liquors' means what common usage has ascribed to the word, to wit, not that he should be intoxicated to the extent that his faculties are completely impaired, but only that degree of influence which loosens the bonds of self-restraint and causes him to operate

his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person.''

We recognize, of course, that it is true, as said in *Tracy* v. *Brecht,* 3 Cal. App. (2d) 105, 111 [39 Pac. (2d) 498], quoting from Wigmore on Evidence, section 933, that:

'' 'Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect or to communicate.' ''

Furthermore, we are in accord with the expression upon which respondent relies from *Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418, 422 [24 Pac. (2d) 559], that:

''From evidence that a person had been drinking intoxicating liquor and thereafter drives his car in a negligent manner, it does not follow as a matter of law that he was driving while under the influence of intoxicating liquor.''

We think, however, that so far as the facts of the instant case are concerned, the application of the principles just referred to must be understood in connection with the controlling authority of *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal. (2d) 480 [55 Pac. (2d) 870], where, so far as the question of intoxication was concerned the facts were strikingly similar to those in the case at bar. It was there holden that the trial court was justified in permitting the jury to pass on the question of the defendant's intoxication, since it was a matter upon which, under the evidence, reasonable minds might differ. It is our opinion that the same situation existed here.

█ Respondent's final position is that where the guest, plaintiff, participates in drinking with the driver, defendant, and knows defendant's condition, the guest cannot recover, even though the driver was intoxicated. This contention is founded on the well-reasoned authority of *Schneider* v. *Brecht,* 6 Cal. App. (2d) 379 [44 Pac. (2d) 662], in which a rehearing was denied by the Supreme Court. There both plaintiff and defendant had engaged together by mutual consent in an orgy of drinking extending over the most of an afternoon, after which the plaintiff entered the automobile which the defendant drove. The driving was so negligently done as to bring about an accident. The court found as a fact that the plaintiff, when she entered the automobile, knew of the defendant's intoxicated condition, and knew that the defendant's intoxication had reached such an extent that the

defendant was incapable of careful driving. In these circumstances it was said (pp. 383, 384):

"While it is true, generally speaking, that ordinary negligence on the part of a plaintiff is not a defense upon which a defendant may rely when the complaint is based upon a charge of willful misconduct, this overlooks a principle which we think must be considered, to wit: That where the negligence of the plaintiff is of such a character that it contributes to, and really becomes a part of, and the inducing cause of the defendant's willful misconduct, no recovery can or should be had."

We do not question the cogency of this reasoning nor the correctness of the result which the court in that case reached. But the situation in the instant case is different. We do not have before us either a verdict found by the jury upon submission of the case to it upon the evidence or any findings of fact by the trial court. It is not, therefore, a question of the legal effect of such a verdict or of such findings. ▌ What we have here is a verdict for the defendant brought in under the court's instruction. Upon an appeal from such a verdict appellant is entitled to have every legitimate inference drawn in her favor. While it is true that in the instant case the parties had both been drinking during the time they were at the dance hall, and had the case been submitted to the jury it might have found respondent to have been so far intoxicated as to affect the safety of his driving, either by making him drowsy or otherwise, still the evidence does not indicate that his appearance was such as necessarily to warn appellant of his inability properly to drive. So far as appears she may have had no reasons for real apprehension, at least until he fell into the doze and grazed the curb, and may not, even then, be chargeable with fully realizing her danger or being in any position to have avoided it. Instead of being parallel in its facts to those with which the court was confronted in *Schneider* v. *Brecht, supra,* the facts in the instant case are almost exactly parallel to those in *Lindemann* v. *San Joaquin Cotton Oil Co., supra.* That, too, was a guest case. There, too, the parties had been drinking together. There the accident was found to have been due to the driver's intoxication, as, so far as we can see, the jury might here have found it due to respondent's intoxication. Despite all this the Supreme Court, in *Lindemann* v. *San Joaquin Cotton Oil Co., supra,* sustained

a verdict in the plaintiff's favor and held that it was not only for the jury to decide whether the defendant was intoxicated or not, and whether, if intoxicated, that was the proximate cause of the accident, but also whether the plaintiff knew the defendant to have been so intoxicated as to make his driving dangerous. The court said (p. 501):

"There is no merit in the suggestion or contention that the evidence which tended to establish the intoxication of defendant Ewing to the degree which would render him liable for the injuries and damages suffered by reason of the accident is necessarily conclusive of the question as to whether plaintiff had or should have had knowledge that Ewing was so far affected by intoxicating liquor as to defeat his claim for damages. If that is true, then every person riding as a guest would be defeated by proof of the single fact that the driver was not in a fit condition to drive the automobile. The question upon which liability depends is whether the plaintiff knew or should have known that the defendant Ewing was not in a fit condition to drive his car on the occasion of the accident."

In the light of the Lindemann case we cannot say that the mere fact that appellant had to some degree been drinking with respondent prior to starting home either estops her from prosecuting this action or renders her as a matter of law guilty of such negligence as to preclude a recovery.

The judgment is reversed.

Marks, Acting P. J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 8, 1938. Houser, J., voted for a hearing.