No. 15,471.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL UNION No. 55 *v.* SALTER.
(167 P. [2d] 954)

Decided March 4, 1946. Rehearing denied April 8, 1946.

Mr. W. A. ALEXANDER, Mr. DONALD B. ROBERTSON, Messrs. WOOD, SHUTERAN, ROBINSON & HARRINGTON, for plaintiff in error.

Mr. WALTER F. SCHERER, Mr. JOHN F. MUELLER, for defendant in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

Francis H. Salter suffered injury from an automobile accident while riding as the guest of one Johns, and recovered judgment against plaintiff in error as Johns' employer.

■ The first ground urged for reversal is that the evidence is insufficient to establish "negligence consisting of willful and wanton disregard of the rights of others," as required under our guest statute. An examination of the testimony of plaintiff, who is the only living party and witness to the accident, shows considerable inconsistency, especially as between his deposition and his subsequent testimony on the stand: but he testified as to excessive speed at which Johns drove; as to his boasting that he would show plaintiff how fast the car would go; as to plaintiff's warning Johns against going too fast, and requesting that he permit plaintiff to drive, which warning and request were ignored. The question of consistency and credibility of the testimony of plaintiff was for determination by the jury and we cannot say there was no substantial evidence to support the charge of negligence under the guest statute.

■ It is next urged as a ground for reversal that at the time of the accident Johns was not acting within the scope of his employment by defendant; hence we must consider whether there was any substantial evidence to support the finding of the jury in that regard. The evidence shows that the United Brotherhood of Carpenters and Joiners is composed of local unions, of which there were nineteen in the state of Colorado. Each of these was chartered and given a separate and specified territorial jurisdiction under the constitution of the national organization. This jurisdiction covered the making and maintaining of agreements with employers of carpenters concerning hours of labor, working conditions and wages as established by the union within the territory under its control. Usually each local union acted through an

employed business agent who represented it in negotiating and enforcing its agreements, in enforcement of local trade rules, in acting as go-between between the men and their employer, and in obtaining employment for members.

The Denver Local Union No. 55 had jurisdiction in the area included within a fifteen mile radius of the city of Denver, and Johns for ten years had been its elected business agent. As such he was paid a journeyman's regular full-time compensation and allowed twenty dollars a week for his expenses and use of his car in connection with his duties. Local Union No. 968 at Hasty, some 240 miles from Denver, had been organized because of the construction work then in progress at the Caddoa dam and had jurisdiction over that area. This was a small local and employed no business agent.

In addition to the local unions the constitution of the brotherhood provided for a central body of all the locals in the state which was known as the State Council of Carpenters. It had an executive board which met at prescribed times and elected a president who received no salary, but was paid his expenses incurred in traveling about the state in behalf of the council. The presidency of the state council was considered an honorary position. The president had jurisdiction throughout the state over the interests of all carpenters and in the event a dispute arose over any matter concerning the employment of union carpenters within the territorial jurisdiction of a small local union which did not have a business agent or had one who was not considered qualified, the president of the state council would usually be called upon to negotiate in behalf of the local union where the dispute existed. Johns, the ill-fated owner and driver of the car, who was killed in the accident which resulted in plaintiff's injuries, was not only business representative of defendant Denver Local No. 55, but for some years had been president of the State Council of Carpenters. As such president he had made several trips

to Hasty to reorganize and assist the local union there, for which his expenses had been paid by the state council.

The local lodges of carpenters and joiners had an agreement through their State Council of Carpenters by which a member of any local union could work in any territory outside the jurisdiction of his local by the use of what was called the "State Council Working Card" and a referral slip furnished by his local and by further purchasing what was known as a "working card" at the local where he was to work. When further carpenters were needed on the project at Caddoa and there were not available men there, frequently Johns would be notified, and he would attempt to procure the number needed from his local at Denver, or from Pueblo or Colorado Springs. The agreement for employment of labor made by the Caddoa contractors was signed by plaintiff Salter for the teamsters, by one Walsh for the operating engineers and by Johns who signed for the State Council of Carpenters. Defendant Local Union No. 55 was not a party to the contract.

In addition to the organizations of the separate crafts employed on the Caddoa dam, there was a further organization of the union workers there employed, known as the Heavy Construction Council. This body represented the four vitally interested unions employed on that project; the iron workers, truck drivers, carpenters and engineers. The members of those unions working on the project were all subject to monthly assessments for its funds. Plaintiff was president of this Heavy Construction Council.

Shortly prior to the date of the accident, plaintiff, Johns, and one Walsh who was business representative of Engineers' Local No. 9, discussed going together to Caddoa dam to check up on the work there, particularly in regard to working hours and conditions of membership, as there was trouble brewing because of the employment of nonunion people on the job, as well as

in the matter of wages and general working conditions. The three men also discussed the matter of attempting to rent or buy a building suitable for offices and a meeting hall which they thought might be financed through contributions from the carpenters, truck drivers and engineers to a fund set up under the Heavy Construction Council. Johns and plaintiff went together to Hasty in Johns' car, and plaintiff paid nothing for transportation. They arrived in Lamar late Saturday night where they talked with Edwards, who was employed by the several unions to represent all of them during the absence of a business agent on the project, and spent the night there. The next morning Johns took plaintiff in his car to Hasty, where they learned that the contractor was away and that they could not see him until the next day. They spent the time from before noon until about six o'clock in the evening at what plaintiff termed "a normal beer joint and dance hall" at Hasty, which was a central congregating point for the people in that vicinity. About six o'clock in the evening they started back to Lamar intending to spend the night there, go duck hunting early the next morning, and then return to Hasty for the purpose of attempting adjustment of wage scale and hours and employment of nonunion men with the contractor. The accident occurred shortly after leaving Hasty. Plaintiff testified that Lamar was the nearest "habitable" town.

Plaintiff's testimony, so far as it tended to establish that Johns was acting within the scope of his employment by defendant, consisted largely of conclusions, as that Johns "always acted in the capacity of business agent for Local 55, to my knowledge, on that trip." This was refuted by plaintiff's admission that he was not familiar with the details of operation of the carpenters' union and that Johns represented all the carpenters on the job, whether or not they belonged to defendant local union. However, there was testimony by plaintiff's witness Edwards that defendant Local No. 55 was a mem-

ber of the Heavy Construction Council representing the workmen on that project and that Johns while with the witness obtained an agreement with the contractor to replace nonunion men with men from Local 55 if they could furnish them, and that they did furnish them. While this testimony was contradictory of other evidence submitted, it was sufficient to raise an issue of fact to be determined by the jury, and if the jury believed the testimony of Edwards to the effect that Johns had made an agreement with the contractor for the employment of carpenters who were members of defendant Local 55, and that the trip to Hasty was made in part for the reason that the contractor was employing nonunion labor and it was desired to have such labor replaced by members of defendant local union, the jury might find by inference therefrom that Johns was acting within the apparent scope of his employment and that he had implied authority to invite plaintiff, who had like interest in behalf of other employees, to accompany him. The fact, as urged by defendant, that the automobile was personally owned by Johns, and not by the defendant local union, has evidentiary value, but is not conclusive as to whether the car was used in the scope of Johns' employment. It merely eliminates any presumption of such use and, considering the nature of Johns' duties, both as alleged and admitted, the fact of such ownership and the fact, as further urged, that the accident occurred, and the errand was being performed, outside of usual business hours would have slight weight in determining the question.

The third ground argued for reversal is based upon the defense of contributory negligence or assumption of risk, set up in defendant's answer, and the refusal of the trial court to give defendant's tendered instruction predicated thereon.

Plaintiff testified that, although the contractor was not at Hasty and nothing substantial was there done towards either errand of their trip, they both stayed in

and about the "beer joint and dance hall" from before noon until approximately six o'clock, drinking and visiting with workmen on the project, plaintiff conversing with the truck drivers and Johns with the carpenters; that plaintiff was drinking beer that afternoon and would not attempt to say how many—that he couldn't recall and wouldn't even guess at it. He further testified that while he was not in sight of Mr. Johns at all times, as he spent most of his time in the back end of the building and Johns up at the barroom, yet he knew that Johns was drinking and to his knowledge he was drinking beer and whiskey; that he knew Johns was a very heavy drinker but apparently showed the effects of alcohol very slightly if at all; that he was boisterous and argumentative when drinking and was so that afternoon, but that it was not unusual for Johns; that he had seen him drinking before and this was his customary demeanor; that when he entered the car there was nothing about Johns' appearance or manner or method of speech to give him the impression that he was intoxicated; that while leaving town he drove at a reasonable speed, then increased to an excessive speed; that "the car began to weave" and Johns refused to let plaintiff drive or to stop the car at plaintiff's request; that he noticed that Johns "had begun to get rather thick in the voice" and was talking in a very loud tone and said that he was as good a driver as plaintiff and would show him how fast the car would go and he would drive it that way.

Plaintiff's witness, Dick Edwards, testified that he was with plaintiff and Johns at Hasty that afternoon from about three or three-thirty o'clock until about four-thirty or five o'clock; that he saw Johns take "a drink or two," but witness did not spend much time in the barroom; that when he last saw Johns and plaintiff, around five o'clock, they were together; that he had seen Johns several times when he was drinking and that he would say he was then sober, "except for two or

three drinks, or possibly more"; that he wouldn't say he was drunk and "you couldn't tell from his language whether he was drunk or sober." Witness Edwards further stated on cross-examination that when he left the men at about five o'clock, both plaintiff and Johns had been drinking, but both were under control and that he would say either one was capable of driving; that when he left them they were going to take a man to Caddoa and that plaintiff got in the back seat and was lying down in the car.

A guest riding in an automobile, although not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising such care as an ordinarily prudent person would exercise under like circumstances. 63 A.L.R. 1432. In *Wilson v. Hill*, 103 Colo. 409, 86 P. (2d) 1084, where plaintiff was injured while riding as the guest of the driver of an automobile and there was evidence as to a physical condition of the driver, known to plaintiff, which affected the former's capacity to control the car, and that this physical infirmity combined with the driver's negligence in causing the accident, we said: "If a guest knows that danger may follow the operation of the car because of the physical incapacity of the driver * * * it is the duty of the guest to take such measures as may be open to him to avoid the threatened injury and he is guilty of negligence if he fails to so do. If the discharge of such duty can only be met by leaving the vehicle at the first available opportunity, if such is offered, the passenger may be deemed guilty of contributory negligence if he elects to remain in the car, but the passenger's duty to leave the automobile must be judged in the light of all the surrounding facts and circumstances." In that case an instruction was tendered for submission of that issue to the jury, and judgment favorable to plaintiff was reversed for failure of the court to submit a proper instruction thereon.

■ The effect of intoxicating liquor in depriving a driver of care and caution and inducing physical incapacity in the operation of a car is universally known and tragically illustrated almost daily. Where one becomes a guest and imprudently enters a car with knowledge that the driver is so under the influence of intoxicants as to tend to prevent him from exercising the care and caution which a sober and prudent man would employ in the operation and control of the car, the guest is barred from recovery by reason of his contributory negligence, and as having assumed the risk involved. Where the evidence of such fact is without conflict, plaintiff is barred from recovery as a matter of law. *Schneider v. Brecht,* 6 Cal. App. (2d) 379, 44 P. (2d) 662; *Hirsch v. D'Autremont,* 133 Cal. App. 106, 23 P. (2d) 1066; *Franco v. Vakares,* 33 Ariz. 309, 277 Pac. 812. Where the evidence is sufficient to raise a question as to plaintiff's knowledge and prudence, the determination of that issue must be submitted to the jury or other trier of facts. *Tracy v. Brecht,* 3 Cal. App. (2d) 105, 39 P. (2d) 498; *Lindemann v. San Joaquin Cotton Oil Co.,* 5 Cal. (2d) 480, 55 P. (2d) 870; *Jensen v. Chicago etc. Ry. Co.,* 133 Wash. 208, 233 Pac. 635; *Swartz v. Johnson,* 152 Tenn. 586, 280 S.W. 32, 47 A.L.R. 323; *Kirmse v. Chicago, etc. Ry. Co.,* 73 Ind. App. 537, 127 N.E. 837; *Winston's Administrator v. City of Henderson,* 179 Ky. 220, 200 S.W. 330, L.R.A. 1918C 646.

The rule was recognized even in the case of a horse and buggy guest. In *Cunningham v. Erie R. Co.,* 121 N.Y.S. 706, where a guest riding in a buggy with one Gaige was killed at a railway crossing, the appellate court said: "The court should have charged the defendant's request that if the intestate knew, or would have known if he had been sober, that Gaige was in such a state as to be incapable of giving the attention to what he was doing which a man of prudence and reasonable intelligence would have given, the plaintiff cannot recover."

In *Packard v. Quesnel,* 112 Vt. 175, 22 A. (2d) 164, judgment for plaintiff guest was reversed for failure of the trial court to give an instruction on contributory negligence where there was evidence of intoxication of the driver and denial thereof by the latter and other witnesses. The court said, "From this evidence it was for the jury to decide whether in fact Senecal [the driver] was intoxicated and if he was, whether the plaintiff knew or ought to have known his condition and whether such intoxicated condition, if found to exist, was the proximate cause or one of the proximate causes of the accident. These questions are ordinarily for the jury." The court noted that many authorities place the bar to recovery on the ground of contributory negligence, and that others place it on the ground of assumption of risk.

In the case before us the court or jury was not required to accept plaintiff's testimony as to defendant's condition and his knowledge thereof as establishing the truth of the facts to which such testimony was directed, even though it is not contradicted by other direct evidence. *Ward v. Atkinson,* 22 Colo. App. 134, 123 Pac. 120; *Nelson v. Lunt,* 74 Colo. 265, 220 Pac. 1006. Reasonable inferences from circumstances tending to discredit or weaken such testimony should be considered. 32 C.J.S., p. 1093, §1038. The intoxicating effect of the alternate drinking of beer and whiskey is a matter of common knowledge. Plaintiff knew of such drinking by Johns. The equivocal testimony of plaintiff's witness, Edwards, that Johns was sober "except for two or three drinks, or possibly more," that he wouldn't say he was drunk, and he couldn't tell from his language whether he was drunk or sober, would justify an inference of danger from his driving, as readily as an inference of his sobriety and safe driving. The fact that plaintiff knew Johns was a heavy drinker and that in addition to knowledge of his actual drinking he knew that Johns spent most of the afternoon at the barroom of the build-

ing, and that he was boisterous and argumentative, together with the fact that, admittedly, Johns showed positive evidence of intoxication just prior to the accident, constitutes testimony and circumstances sufficient to have required a submission to the jury of the question of fact as to plaintiff's negligence in riding as his guest.

In *Archer v. Bourne,* 222 Ky. 268, 300 S.W. 604, the evidence was that the driver took two drinks of whiskey in the presence of a passenger who was thereafter injured when the driver slumped down in his seat and the car left the road and overturned. Notwithstanding the fact that she had no knowledge of prior drinking by the driver and that she objected when the second drink was taken and asked to be taken back to her hotel, the court held she was barred from recovery by contributory negligence as a matter of law in that she voluntarily assumed the risk.

In *Taylor v. Taug,* 17 Wash. (2d) 533, 136 P. (2d) 176, the only testimony of the use of intoxicants was that members of the party, other than plaintiff, had been drinking some beer together at a tavern. The court said: "The testimony of Edna Dimbat which we have set out shows that respondent and the two Caples had been drinking intoxicating liquor during the evening, and were so engaged at the time appellant and her girl friend came into Marsh's tavern. That the drinking of intoxicating liquor effectually destroys the faculties essential to safe driving, is of such common knowledge that no one with sense will submit to the peril of riding with a driver who has recently consumed liquor. Anyone who submits to that peril assumes the risk attendant upon the journey and is guilty of contributory negligence which precludes recovery. Appellant was a high school graduate and certainly must have appreciated the danger of riding in a car driven by one whom she had just seen drinking intoxicating liquor." Recovery was denied on the ground that appellant had "assumed the

risk attendant upon the journey," and that she was guilty of contributory negligence.

■■ In the instant case defendant pleaded contributory negligence, objected and excepted to the instructions because they did not submit the question of contributory negligence to the jury, and tendered an instruction to the effect that if plaintiff intentionally and unreasonably exposed himself to a danger which was created by Johns' negligence, of which plaintiff knew, or had reason to know, they must find for the defendant. The evidence of known hazard from the condition of the driver in the present case seems stronger than that in either of the two cases just mentioned; however, we shall not follow those cases to their conclusion and hold plaintiff barred from recovery as a matter of law by the mere fact of knowledge that the driver had been drinking. On the other hand, we believe it not necessary to establish actual and apparent intoxication of the driver and knowledge of such intoxication by the guest in order to raise the issue of assumption of risk. There is no marked border line of intoxication and no definite standard of its predictable effect. " 'Under the influence of intoxicating liquors' means what common usage has ascribed to the word, to wit, not that he should be intoxicated to the extent that his faculties are completely impaired, but only that degree of influence which looses the bonds of self-restraint and causes him to operate his car in a manner different from that in which it would be operated by an ordinarily cautious and prudent person." *People v. McKee*, 80 Cal. App. 200, 205, 251 Pac. 675, 677, quoted in *Erickson v. Vogt*, 27 Cal. App. (2d) 77, 80 P. (2d) 533, 535, 536.

■ It is a matter of common knowledge that, whatever may be the result in a particular case, the drinking of intoxicating liquors generally increases the likelihood of negligent driving. Voluntarily becoming the guest of a driver who has been drinking intoxicants is analogous to becoming the guest of an operator who is known to

have been a negligent driver. While his use of intoxicants is an indication that an operator is likely to drive recklessly, it does not establish negligence as a matter of law, but is evidence sufficient to raise the issue of contributory negligence. *Wiley v. Young,* 178 Cal. 681, 174 Pac. 316.

Where the guest has knowledge of substantial drinking of intoxicating liquor by the driver and there is evidence tending to show that such drinking was a contributing cause of the driver's negligence, then the issue as to whether the guest was sufficiently forewarned so that under all the circumstances he was negligent in becoming or remaining a guest in the car should be submitted to the jury. He is not barred as a matter of law except where his knowledge of the physical incapacity of the driver and the surrounding circumstances are such that reasonable men could draw but one inference as to his negligence.

In *Erickson v. Vogt, supra,* the court said: "While it is true that in the instant case the parties had both been drinking during the time they were at the dance hall, and had the case been submitted to the jury it might have found respondent to have been so far intoxicated as to affect the safety of his driving, either by making him drowsy or otherwise, still the evidence does not indicate that his appearance was such as necessarily to warn appellant of his inability properly to drive." Under those circumstances, the question of contributory negligence was held to be for the jury. This rule is in no wise a departure from our pronouncement in *Foster v. Redding,* 97 Colo. 4, 45 P. (2d) 940. In that case there was no substantial evidence of knowledge on the part of the guest.

In the present case plaintiff knew that Johns had been drinking intoxicating liquor and his speech and behavior just prior to the accident were strong evidence of its being a contributing cause of his negligence.

The issue of assumption of risk should have been submitted to the jury.

We note that the failure of the trial court to submit to the jury the issue of assumption of risk as constituting contributory negligence was not named as one of the grounds for reversal set out in the motion for new trial; however, it was brought to the attention of the court below, by the pleadings, by the tender of an instruction thereon, and by objection to instructions given for failure to include it. The issue is raised here in the specification of points and argued by both parties in their briefs without objection that the question had not been raised in the motion for new trial, and thereby the defendant in error has waived his right now to object. Bowers, Law of Waiver, §474; *Smith & Co. v. Hill*, 83 Iowa 684, 49 N.W. 1043, 32 Am. S.R. 329. Such waiver neither prevents nor requires our consideration of the point. Under Rule 111 (f), R.C.P. Colo., we may in our discretion "notice any error appearing of record." In view of the importance of the question and the lack of uniformity of authority from other jurisdictions we have elected, in the interest of justice, to consider it.

The judgment is reversed.

Mr. Justice Bakke dissents.

Mr. Chief Justice Knous and Mr. Justice Alter not having heard the oral arguments do not participate.

Mr. Justice Bakke, dissenting.

The Court reverses the judgment because the trial court refused to give an instruction on assumption of risk, and assumes that plaintiff's voluntary assumption of risk was a form of contributory negligence.

Conceding the correctness of the assumption (*Wilson v. Hill*, 103 Colo. 409, 86 P. [2d] 1084), I still think the judgment should be affirmed for the following reasons: 1. Plaintiff's alleged assumption of risk was not spe-

cifically pleaded as required by rule 8 C (c) R.C.P. Colo. 2. The question of the trial court's refusal to give an instruction on assumption of risk or contributory negligence was not raised in the motion for a new trial. It is unnecessary to cite authorities on this well-settled proposition. 3. The defense of contributory negligence is not available to one who is guilty of wanton and willful misconduct. 45 C.J. 981, §533, citing *Montgomery v. Colorado Springs Co.*, 50 Colo. 210, 114 Pac. 659. See, also, Mr. Justice Hilliard's dissenting opinion in *Healy v. Hewitt*, 101 Colo. 92, 71 P. (2d) 63.

The Court's opinion may result in a rule whereby the driver of an automobile, who is accustomed to the use of intoxicating liquor, may, by the simple expedient of taking a drink or two in the presence, or with the knowledge, of a prospective guest, escape liability for subsequently occurring accidental injuries to the latter and which are occasioned by the driver's negligence and a willful and wanton disregard of the rights of his guest.