[Civ. No 8918. Fourth Dist., Div. Two. Jan. 23, 1969.]

GAIL E. LESKOVICS, Plaintiff and Appellant, v. JEWEL
R. WILSON, as Administratrix, etc., Defendant and
Respondent.

Hayton, Whitlock & Rankins, Arthwell C. Hayton and Mar-
shall Miles for Plaintiff and Appellant.

Donald S. Gillespie and William A. Flory for Defendant and Respondent.

McCABE, P. J.—Plaintiff brought this action against the estate of Robert Wilson, deceased, for damages for personal injuries sustained by a guest in a head-on automobile collision.

On Friday, May 10, 1963, at about 5 p.m., plaintiff, accompanied by Mrs. Lund and Mrs. Peifer, left Barstow, California, for Las Vegas, Nevada, in plaintiff's car with plaintiff driving. Car trouble developed along the way, and the three ladies stopped at Baker. They entered a restaurant in Baker and discussed whether they should return to Barstow or take the bus to Las Vegas. Before a decision had been reached, the deceased arrived and was introduced to Mrs. Lund by Mrs Peifer. Plaintiff was already acquainted with the deceased. The decedent, who stated that he was on his way to Lake Mead to fish, offered to take the ladies to Las Vegas. This offer was accepted and plaintiff's car was left in Baker.

The party of four arrived in downtown Las Vegas at approximately midnight. They proceeded to gamble and drink at various establishments until 5 a.m., when they had breakfast. The decedent attempted to make arrangements for the renting of a motel room, but due to the fact that there were only two beds for the three women and the decedent, the motel room was not rented.

The parties continued to gamble until 4:30 p.m., May 11, when they left the downtown area of Las Vegas and started for home. At Mrs. Peifer's request, they stopped at the Hacienda, a casino on the "strip," so that she could use the restroom. The decedent and Mrs. Peifer started gambling again. Plaintiff slept for a while in the lobby of the Hacienda. Mrs. Lund checked on the bus schedules and ascertained that the next bus would not leave for four hours. Plaintiff and Mrs. Lund told the deceased they wanted to go home, but the decedent and Mrs. Peifer did not want to leave. The decedent said he would take plaintiff and Mrs. Lund to plaintiff's car at Baker, then he and Mrs. Peifer would return to Las Vegas.

The group left the Hacienda driving in a westerly direction toward Baker with the decedent driving. Plaintiff told the decedent she would like to drive inasmuch as she had slept, but the decedent did not allow her to drive. He said he was all right, and if he got sleepy, he would let her know, and she could drive.

While the decedent was in the city limits, his driving was good. After leaving the "strip" and reaching the highway, however, he drove very fast. Both plaintiff and Mrs. Lund asked him to slow down, but he did not slow down. He occasionally drove on the wrong side of the road and off the road. Plaintiff asked him several times to allow her to drive. Plaintiff requested Mrs. Peifer to ask the decedent if she could drive. Plaintiff also asked him to stop the car rather than drive facing the sun. He refused to stop or allow plaintiff to drive, but said that he would like Mrs. Peifer to talk to him.

At approximately 7 :13 p.m., decedent, while driving on the wrong side of the road, collided head-on with another vehicle. The driver of the other vehicle estimated the speed of the decedent's vehicle at 65 to 80 miles per hour during the limited time he was able to observe it. He testified that the decedent had completed a curve on the wrong side of the highway and continued for at least 10 car lengths prior to impact toward his vehicle without turning right or left.

The accident occurred in a detour area on Highway 91, which was a two-lane highway. There was a solid yellow center line for westbound traffic with a broken white center line in the eastbound lane. It was determined that the decedent's vehicle was approximately 5 feet south of the center line at the time of the collision. It was further determined that the old road angled to the left for westbound traffic and that part of the old pavement was still present on the detour. The broken white line of the old road, which white line had been painted over, was still visible. The decedent's car was to the right of this line at the point of impact. There were some white "paddle markers" on the south edge of the highway at the point where the accident occurred, but there were no "paddle boards" or markers in the area where the old road had been torn up.

It is manifest that plaintiff was a "guest" in decedent's car as that term is defined in Vehicle Code, section 17158. Under that section, she cannot recover from defendant for the substantial personal injuries sustained in the accident unless she proved that her injuries proximately resulted from the intoxication or wilful misconduct of the deceased. The trial judge instructed the jury on wilful misconduct. She also instructed the jury that plaintiff could not recover for mere negligence on the part of decedent and that contributory negligence or assumption of the risk on the part of the plaintiff would bar her recovery. The jury returned a verdict in favor

of the defendant's estate and against plaintiff. Judgment was thereafter entered in accordance with said verdict. Plaintiff moved for a new trial, which motion was denied.

Plaintiff appeals from the judgment and raises the following issues: (1) the trial court erred in instructing the jury that contributory negligence was a possible defense to plaintiff's cause of action; (2) the trial court erred in instructing the jury that assumption of risk was a possible defense to plaintiff's cause of action; (3) the trial court erred in denying plaintiff's motion for a new trial; and, (4) the evidence was insufficient to justify the verdict for the defendant.

At the time of trial and of the filing of the briefs on this appeal, the rule of *Williams* v. *Carr*, 68 Cal.2d 579 [68 Cal. Rptr. 305, 440 P.2d 505], had not been pronounced. In *Williams*, the court, after reviewing the authorities from this and other jurisdictions and learned commentators in the field of torts, concluded that it was error to instruct on contributory negligence in an action based upon a claim of wilful misconduct. "The contributory conduct of the guest which may bar his action must be limited to misconduct which is as reprehensible as that of his host, i.e., conduct which shows a willful or reckless disregard of his own safety." (68 Cal.2d at p. 588.) Inasmuch as there was substantial evidence to show wilful misconduct on the part of defendant Carr, and the court had no way of knowing whether the verdict for defendant was based on the contributory negligence instructions, the judgment was reversed.

In the case under review, there is likewise substantial evidence to show wilful misconduct on the part of decedent. It is well settled that where a driver momentarily dozes off at the wheel of his car and after awakening continues to drive and an accident results from his falling asleep again, it is a question of fact for the jury as to whether the driver was guilty of wilful misconduct in continuing to drive. (*Ching Yee* v. *Dy Foon*, 143 Cal.App.2d 129, 136-137 [299 P.2d 668]; *Halstead* v. *Paul*, 129 Cal.App.2d 339, 340-341 [277 P.2d 42]; *Erickson* v. *Vogt*, 27 Cal.App.2d 77, 80-82 [80 P.2d 533].) Although there is no testimony that decedent did fall asleep, it is certainly inferable from the evidence. Moreover, there is substantial evidence that decedent was aware that he had been continuously awake for at least 24 hours and was aware that he was tired when he left Las Vegas. Nevertheless the decedent insisted upon driving, drove at an excessive

speed into the sun, wove off the road, drove on the wrong side of the road, and refused to stop or turn over the driving to plaintiff. Under such circumstances, the jury could properly conclude that his refusal to stop or turn over the driving to plaintiff showed a wanton and reckless disregard for the consequences. (See *Williams* v. *Carr, supra,* 68 Cal.2d 579, 588-589.) Plaintiff argues that these facts establish wilful misconduct as a matter of law and hence the court erred in denying her motion for a new trial. This argument, however, overlooks evidence as to the detour area where the accident occurred, the condition and texture of the highway, the visibility of the old dividing white line, and the lack of paddle board markers, all created a condition where a driver of an automobile could become confused. It is thus a question for the trier of fact to resolve as to whether decedent was guilty of wilful misconduct.

The *Williams* case is dispositive of the present appeal, therefore, we do not decide whether the giving of an instruction on assumption of risk will be proper on the retrial of this case. If the evidence warrants it and such an instruction is submitted, the trial court should give an instruction on assumption of risk. There is no contention made on this appeal that under the evidence there was an assumption of risk by plaintiff as a matter of law.

 For the reasons stated and under the rule of *Williams* v. *Carr, supra,* 68 Cal.2d 579, it was prejudicial error to give the instruction on contributory negligence. As in *Williams,* there was substantial evidence to show wilful misconduct on the part of decedent and there is no way of knowing whether the verdict for defendant was based on the contributory negligence instructions.

Judgment reversed.

Kerrigan, J., and Tamura, J., concurred.