## No. 11,759.

### CARLSON, ET AL *v.* MILLISACK.

Decided November 14, 1927.

Action for damages growing out of an automobile accident. Judgment of dismissal.

## *Reversed.*

1.  NEGLIGENCE—*Auto Speed—Jury Question.* In an action for damages resulting from an automobile accident, the question whether defendant was driving in excess of the statutory speed limit, and if not, whether he was driving at such a rate of speed, as would, under the circumstances constitute negligence, held for the determination of the jury.

2.  *Contributory, defined.* Contributory negligence is negligence on the part of the injured person that so far contributed to the injury that without it the injury would not have occurred.

3.  *Contributory—Auto Guest.* In an action for damages resulting from an automobile accident, it is held that the court erred in holding, as a matter of law, that the guest in an automobile was guilty of contributory negligence in not protesting against the driver proceeding at a rate of speed in excess of the statutory limit.

4.  *Contributory, by Guest.* In an action for damages resulting from an automobile accident, request of the guest of the driver, "lets hurry up and get home," held not, as a matter of law, to be a request to drive at an excessive rate of speed so as to preclude a recovery, on the ground of contributory negligence.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. H. L. LUBERS, Mr. EVERETT BELL, for plaintiffs in error.

Mr. G. W. HUMPHREY, Messrs. CRUMP & RILEY, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE plaintiffs in error sued the defendant in error for damages for the death of the plaintiffs' unmarried daughter, Elsie. A nonsuit was ordered, and the case was dismissed.

The daughter, Elsie, was killed by the overturning of the defendant's automobile on the north side of East Evans avenue, opposite, or nearly opposite, the north end of what the witnesses referred to as the Happy Canon road, near Denver. The road terminates at East Evans avenue. There is no road continuing north of that avenue at that place. It is vacant land there. The avenue is graded, the center being higher than the sides, leaving a shallow ditch or depression a few inches deep on each side of the avenue.

On March 24, 1925, Elsie, upon invitation of the defendant, went riding with him in his automobile. They started at 8:30 o'clock in the evening of March 24, 1925. Toward 11 o'clock they were several miles southeast of Denver, where, observing another automobile stalled in a hole in a culvert, the defendant got out of his car and helped get the other car out of the hole. Just after the other car was gotten out of the hole, and while the defendant's car was still headed away from Denver, Elsie asked the defendant what time it was. He told her it was 11 o'clock, whereupon she said, "Well, let's hurry up and get home. I have to get up in the morning and get to work." The defendant turned his car around and started for Denver on what was called by the witnesses the Happy Canon road, and which, for convenience, we will refer to by that name. The road was good, but the night was dark, there being no moon. An account of what followed was given by the defendant, who was called to the witness stand by the plaintiffs for cross-examination under the statute. He testified that he drove the car; that Elsie had no control over the driving; that he had a spotlight, but he doesn't remember its be-

ing turned on, though it might have been on; that the headlights were on, but he couldn't say how far ahead they disclosed the road; that "they weren't quite average"; that when he started back he did not know what road he was on; that Elsie spoke of it as the Happy Canon road; that there was a sign at the railroad crossing, though he did not remember paying any attention to it; that just before reaching Smith's house, which is at the southeast corner of the Happy Canon road and Evans avenue, he asked Elsie at what rate of speed the car was traveling; that she looked at the speedometer in front of her, and said, "Thirty-seven miles an hour"; that this might have been a number of seconds—10 or 15 seconds—before the accident; that he did not see Evans avenue until "we were right upon it"; that he could not see across that avenue; that he had never traveled on that road before; that when he saw it was Evans avenue, he endeavored to make a turn, because he couldn't tell what was ahead; that the Happy Canon road ended there; that just as he saw there was not any road ahead, he put on the brakes and undertook to turn to the left—"this was a right angle turn there"—and the right wheel of the car hit the grade ditch on the north side of Evans avenue; that the door on the right side came open, the car turned over on its right side, Elsie was thrown out, and the car struck her; that he carried Elsie across the road into Smith's house, where she died. He testified that when he "struck" Evans avenue the car was going 25 to 28 miles an hour; that he was in charge of the car; that Elsie had nothing to do with the management of it. In answer to questions asked by his own attorney, the defendant said that Elsie made no protest about the speed of the car; that he knows of nothing that he could have done to slacken the speed or to make the turn that he did not do or undertake to do to the best of his ability. "Q. When she asked you to hurry home, was it your purpose to accommodate her as far as you could and within reasonably safe driving? A. I

couldn't say that I wouldn't have driven that fast.'' He said that he did not regard the speed as excessive. In answer to questions by the plaintiffs' attorney, he said that he did not know that the road he was driving on ended at Evans avenue; that he could see as far as the headlights would show—would say 50 feet; that after Elsie told him the car was going 37 miles per hour, he slowed down, so that when he ran into Evans avenue he had slackened the speed, he should say, 4 miles per hour; that at the time he made the turn and the car turned over he was going 25 to not to exceed 28 miles per hour.

Smith, who lived at 4600 East Evans avenue, being the southeast corner of that avenue and the road referred to as the Happy Canon road, testified that the defendant brought Elsie to his house after the accident; that while there the defendant admitted that he was traveling about 37 miles an hour. He was asked by the defendant's attorney, ''You don't mean to say that when he says he was going 37 miles, that he was going 37 miles after he made the turn?'' The witness answered, ''That was just the remark he made in the kitchen. How fast he was going when he went past our window, I couldn't say.'' Section 1269, C. L., forbids driving at a speed exceeding 35 miles per hour. There is no evidence that Elsie was familiar with the operation of automobiles, or that she ever rode in one before.

1. It was error to hold, as a matter of law, that the defendant was not guilty of negligence proximately causing the accident and the resulting death of the plaintiffs' daughter. It was for the jury, not the court, to determine whether or not the defendant exceeded the statutory speed limit; and, if he did not exceed that limit, whether or not he was negligent in driving his car at the rate of speed at which he was driving it, on an unfamiliar road, on a dark night, when the headlights on his car ''weren't quite average,'' when the headlights ''would show—would say, 50 feet.''

2. It also was error to hold, as a matter of law, that, if the defendant was negligent, Elsie was guilty of contributory negligence. Contributory negligence is negligence on the part of the injured person that so far contributed to the injury that without it the injury would not have occurred.

Counsel claim that it was the duty of Elsie to protest against the driving of the car at the speed at which it was being driven, and they call attention to the fact that the speedometer was not on the driver's side of the car, but directly in front of Elsie. In the circumstances of this case, no such duty devolved upon her. In *Hedges v. Mitchell*, 69 Colo. 285, 194 Pac. 620, the plaintiff was injured while riding as a guest in the defendant's automobile. The collision was proximately caused by the defendant's driving to the left on the roadway circling the Thatcher monument in City park in Denver, in violation of an ordinance providing, "A vehicle passing around a circular roadway shall keep to the right from the entrance or exit." It was contended that the plaintiff was guilty of contributory negligence in that he failed to warn or guide the defendant as to his route of travel and his speed. Delivering the opinion of the court, Mr. Justice Burke said: "But a duty to give such advice implies a duty to heed it and the rear seat driver is responsible for enough accidents as the score stands, without the aid of judicial precedent. The place for a passenger who knows better than the driver of a car when, where and how it. should be operated is at the wheel." See also *St. Mary's Academy v. Solomon*, 77 Colo. 463, 238 Pac. 22, 42 A. L. R. 964; *Denver Tramway Corporation v. Gentry*, 82 Colo. 51, 256 Pac. 1088.

In answer to the defendant's inquiry, Elsie informed him that the car was going at 37 miles per hour. So it appears that when she did observe the speedometer, she told him what speed it registered.

The only other circumstance relied upon as constituting contributory negligence is Elsie's statement, "Well,

let's hurry up and get home. I have to get up in the morning and get to work." But we must consider the circumstances in which the statement was made. The defendant and Elsie had had their pleasure ride interrupted by the accident to the other car; that car had just been gotten out of the hole; the defendant had just informed Elsie that it was 11 o'clock; the defendant's car was still headed away from home. It cannot be said, as a matter of law, that that statement was a direction or a request that the defendant drive at an excessive rate of speed. If, while riding home, she had urged him to drive at a rate of speed that was excessive, a different question would have been presented. Even if Elsie's statement bore the construction above suggested, and that only, and if it could be held, as a matter of law, to constitute negligence on her part, still, to bar a recovery the negligence must have so contributed to the accident that without it the accident would not have occurred. The defendant's own attorney asked this question, which put upon Elsie's statement the construction most favorable to the defendant: "When she asked you to hurry home, was it your purpose to accommodate her as far as you could and within reasonably safe driving?" Instead of giving the answer that this leading question plainly suggested, the defendant frankly stated: "I couldn't say that I wouldn't have driven that fast."

The judgment is reversed, and the case is remanded for a new trial.

MR. JUSTICE DENISON, sitting for MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.