THOMAS F. MORAN, ADMINISTRATOR, APPELLEE, V. MICHAEL J. MORAN ET AL., APPELLANTS.

FILED FEBRUARY 14, 1933. No. 28339.

*Chambers & Holland, Hubka & Hubka* and *C. Russell Mattson,* for appellants.

*Bartos, Bartos & Placek* and *J. A. McGuire, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

Action under Lord Campbell's Act by plaintiff as administrator of the estate of Winnifred E. Moran, his deceased wife, to recover damages for her death due to injuries received in an automobile accident. This accident, and the fatal injuries to the deceased caused thereby, it is alleged were due to the negligence of defendant Maurice B. Moran in the operation of the automobile in which Winnifred E. Moran was riding, and also of Michael J. Moran, the owner thereof. The answer admits the occurrence of the accident, denies generally the allegations of negligence contained in the petition, specifically denies "that the accident was caused by the defendants," and pleads contributory negligence on the part of the deceased. Plaintiff, by reply, denied new matter contained in the answer, and on issues thus framed a trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $3,500. Defendants' motion for new trial was overruled, and they appeal.

In this court the sufficiency of the evidence is challenged; error is alleged in the refusal, and in the giving, of certain instructions by the trial court; rulings of the trial court in the admission and exclusion of evidence are complained of; and it is insisted that the defense of contributory negligence was established. This is a law action. In view of the verdict of the jury, who are the constitutional determiners of litigated facts, though the evidence on some questions may be said to conflict, still we find it ample to support the jury's findings. We have exam-

ined the instructions, the giving of which as well as the refusal to give by the trial court is complained of, but find no reversible error committed. Likewise, the rulings of the district court on the admission and rejection of testimony, upon due consideration we find are not properly subject to the criticism made; nor do we find the jury erred in their consideration of the evidence relating to the defense of contributory negligence.

In the light of the jury's verdict, it may be said that the following facts may be deemed to be established by the evidence: Michael J. Moran, defendant, and Thomas F. Moran are brothers, and the deceased and the wife of Michael J. Moran are sisters. Michael lived at Wymore, Nebraska, and owned a Chevrolet automobile, kept by him for business and pleasure, and ordinarily operated by himself and other members of his family. On November 5, 1930, he entrusted this car to his son Maurice, aged 24 years, but who still lived at home as a member of the father's family. This was done for the purpose of conveying Mrs. Michael J. Moran, her sister, and two young men to Eram, Oklahoma, and return. This party made the trip to Eram without incident. On the return journey at one o'clock a. m. on November 9, 1930, this Chevrolet containing this party, with Maurice B. Moran at the wheel, then proceeding northward over an improved and graveled highway, collided with a southbound truck then traveling on the portion of the road west of the center thereof. At the time of the collision the Chevrolet was being driven on its left (or wrong) side of the highway at the rate of 50 miles an hour. No successful attempt to check its speed, or to return to its proper position on the highway, was accomplished by the driver prior to the collision, although the lights of the approaching truck were discernible and actually discovered by the driver and occupants of the car when several hundred yards distant. The result of the collision was that the Chevrolet was deflected into the road ditch, turned clear over and landed on its wheels. From this Winnifred E. Moran re-

ceived the injuries that ultimately caused her death. She was a member of this party by invitation. So far as disclosed by the evidence, she occupied the rear seat during the trip; she "was not accustomed to riding in automobiles very much;" previously had not ridden with Maurice B. Moran as driver; and thought that he was driving too fast on the return trip and "cautioned him several times" to that effect.

As applicable to the situation presented by this record, this court is committed to the rule: "Where the owner of a private motor vehicle gratuitously carries another person therein as a passenger, he owes such passenger the duty of exercising ordinary care in the operation of the vehicle, and will be liable in damages if his failure to exercise such care is the proximate cause of injury to his passenger." *Jessup v. Davis*, 115 Neb. 1.

In the present case the automobile, a family car, was entrusted by the owner to the driver, his son, for a definite purpose, and with knowledge of intended employment, and evidently with actual knowledge on the part of the owner of his son's propensity for rapid driving. He is, therefore, chargeable with the results of the son's negligence, a conclusion which is not seriously questioned in the briefs.

Nor did the jury err in its rejection of the defense of contributory negligence in this case. In *Jones v. Schreiber*, 166 Minn. 177, the supreme court of that state had before it a case wherein "defendant and his wife invited plaintiff, her sister and husband to take an automobile ride. Defendant drove the car, the two gentlemen occupying the front seat and the three ladies the rear. * * * All the parties were of mature years and on friendly terms. * * * The car was traveling between 45 and 50 miles per hour for perhaps a mile immediately prior to the accident, during which time the plaintiff did not talk." As a result of the speed the car went into a side ditch seriously injuring the plaintiff. In discussing the contention of contributory negligence on part of the plaintiff, the

Minnesota court said: "She (plaintiff) had never driven a car, but realizing that they were traveling at a dangerous speed became frightened. But being defendant's guest and apparently in fear of being considered officious, she did not protest. There is no rule that decides where silence under such circumstances should cease. Plaintiff had no physical control of the car and no authority to direct its operation. Upon such facts it cannot be said that plaintiff was guilty of contributory negligence as a matter of law." See, also *Johnson v. Evans*, 141 Minn. 356; *Lochhead v. Jensen*, 42 Utah, 99; *Glick v. Baer*, 186 Wis. 268.

In *Marks v. Dorkin*, 105 Conn. 521, a guest who hesitated about accepting the invitation to ride by reason of having considered the driver careless on a previous occasion was held not negligent in consenting to go along, particularly where he asked the defendant to slow up while the latter was speeding at the rate of from 55 to 60 miles an hour, which resulted in the accident in which the litigated injuries were sustained. See, also, *Carlson v. Millisack*, 82 Colo. 491; *Krause v. Hall*, 195 Wis. 565; *Stenstrom v. Blooston*, 177 Minn. 95; *Truso v. Ehnert*, 177 Minn. 249; *Brown v. Davis*, 84 Cal. App. 180.

Indeed, in view of the situation of the plaintiff's intestate immediately prior to the accident, her repeated protests to the driver as to his excessive speed fully, if not more than, complied with the requirement of the law. She was not required to leave the car, rather than continue therein, in view of the situation then existing. *Thomas v. Carter*, 218 Ala. 55.

On the questions just discussed, the verdict of the jury finds ample support in the evidence.

Defendants, in their supplemental typewritten brief, advance that in this case the "causal connection between the alleged negligence and the result sustained" has not been established. A careful consideration of the evidence leads to the conclusion that the injuries sustained in this accident in suit were the proximate cause of the death of

plaintiff's intestate. She was 49 years of age at the time of the accident. She had borne and raised ten children, the eldest 26 and the youngest 4½ years. Her general health before the accident was good. Prior to this time she did all the work about the house for the family, raised chickens, took care of cream, butter and eggs, and did the family sewing. There were 500 chickens raised by her on the home farm at the time of her death. She was a school teacher at the time of her marriage and assisted the children in their studies. She had had no previous accidents, at least none of a serious character. When she arrived home after this accident she could hardly walk, could not use her left arm at all, and thereafter complained of pains in her shoulders and "right chest" so long as she lived. She complained of no such symptoms prior to the accident. Her illness was practically continuous thereafter. She spent part of the time in bed, and lost weight. The family physician, who had been such four or five years previous to the accident, testifies that prior thereto her health was very good the last five years; and aided by X-ray films taken after the accident, and from his personal examinations and observations, such physician testifies that her death was due to pneumonia, not a distinct lobar pneumonia, but an inflammatory condition over the whole chest, attributable to the results of the injuries received in the accident in suit. The testimony of this physician, in the light of the facts of the record, fully establishes the necessary causal connection.

The defendants further challenge the competency of the evidence establishing the pecuniary loss. The husband of deceased, first detailing the work she performed in the home during her lifetime, testified affirmatively that he had continuously observed and knew the fair value of her services prior to the accident, and that the fair value of the same was from $25 to $30 a week. Her expectancy of life was established by the usual tables, admitted in evidence without objection. It may be said that the husband had a proprietary interest in the services of his

wife. Such services are personal in their nature. This jurisdiction is committed to the doctrine that an owner of property is permitted to testify to its value, without further qualification shown, and when uncontradicted, will support a verdict in his favor. *Gibbons v. Chicago, B. & Q. R. Co.,* 98 Neb. 696; *Anderson v. Estate of Akins,* 99 Neb. 630. See, also, *Chicago, R. I. & G. R. Co. v. Groner,* 43 Tex. Civ. App. 264; *Chicago, R..I. & T. R. Co. v. Armes,* 32 Tex. Civ. App. 32.

The defendants further challenge plaintiff's right as administrator of his wife's estate to recover for medical services and medicines furnished the deceased, as well as for cost of X-ray films which appear to have been secured as part of the treatment. This jurisdiction is committed to the view that in an action for personal injuries, "In the absence of proof that she was possessed of a separate estate other than of her cause of action for damages for personal injury, a married woman is not entitled to recover for medical expenses, etc., upon trial of such cause, unless she shows that she has paid the same in whole or in part." *Kepler v. Chicago, St. P., M. & O. R. Co.,* 111 Neb. 273. See, also, *Pomerene Co. v. White,* 70 Neb. 177. No proof of separate estate is disclosed by this record, and payment by the wife is negatived.

It would seem that this rule applies to actions brought by the wife's administrator under Lord Campbell's Act. In the instant case the facts establish a cause of action to the extent of $74 of the husband in his individual capacity, but not in the husband as administrator. It follows that to the extent of $74 the judgment must be deemed erroneous in the instant case.

The judgment of the district court will be reversed unless appellee files a remittitur in the sum of $74 within thirty days. In case remittitur is filed, judgment in the sum of $3,426 in favor of the appellee will be affirmed.

AFFIRMED ON CONDITION.