**Paul D. HINKLE, by his father and next friend, Roy Hinkle; and Roy Hinkle, Appellants,**

v.

**UNION TRANSFER CO., doing business as Union Freightways, a corporation; and Sterling A. Christensen, Appellees.**

**No. 5159.**

United States Court of Appeals
Tenth Circuit.

Dec. 29, 1955.

**404**

Duane O. Littell, Denver, Colo. (Robert W. Mesch, Denver, Colo., was with him on the brief), for appellants.

H. Berman, Denver, Colo., for appellees.

Before BRATTON, HUXMAN, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought by a father and two sons to recover damages suffered when an automobile in which the two sons were riding, collided with the rear end of a truck traveling in the same direction. The principal questions presented by this appeal relate to instructions of the court covering contributory negligence of a passenger riding in an automobile, joint enterprise of the two occupants of the automobile, applicability of state statutes, and unavoidable accident. The case was tried to a jury which returned a verdict in favor of the defendants. The plaintiff Roy Hinkle, who sued on behalf of himself and his son, Paul, has appealed.

Roy Hinkle, the father of Neil, Paul and Marvin Hinkle, lived on a farm about fifty miles west of Ft. Morgan, Colorado. Neil and Paul were members of the Colorado National Guard and were required to attend a meeting of that organization at the Ft. Morgan Armory on the evening of May 26, 1953. Marvin owned a 1939 Plymouth Convertible automobile, title to which was in the father. Neil and Paul took the Plymouth and drove to the National Guard meeting. On their return trip, they stopped at a roadside cafe several miles west of Ft. Morgan to have coffee. When they came out of the cafe, it was

raining and instead of returning to the farm, they decided to go back to Ft. Morgan and spend the night with an uncle. The rain was quite heavy and affected their visibility while driving, particularly when they met lights from oncoming traffic. Neil had driven the automobile at all times since leaving the farm. On the trip back to Ft. Morgan, the boys approached a well-lighted filling station on the north side of the highway. At about the same time, they met several trucks or automobiles, one of which kept its lights on bright, and the boys were not able to see beyond these bright lights. The defendant Christensen, in the course of his employment by the defendant Union Transfer Co., doing business as Union Freightways, a corporation, was driving a large truck and trailer in an easterly direction and was about to make a left turn into the filling station. He observed a car closing in on him quite rapidly from the rear. He slowed down and pulled over to the right side of the highway to furnish it additional room and to permit its driver to see the oncoming cars. When the automobile with the bright lights was alongside the truck, the Hinkle automobile, driven by Neil, ran into the rear end of the truck-trailer and both boys were quite severely injured.

Neil testified that he was traveling thirty to thirty-five miles per hour. He had the headlights on dim, and they permitted him to see about fifty feet ahead.[1] He said that the oncoming headlights reduced his visibility to ten or fifteen feet ahead, and he slackened his speed slightly. Paul testified substantially to the same effect. Neil did not at any time see the truck before the automobile crashed into it. The truck came between the bright lights and Paul, who testified that he was able to see the truck first when it was approximately twenty-five or thirty feet away. Paul observed the truck in time to conclude definitely that it was not moving, but he said nothing to Neil about it and did not remonstrate or object at any time or request Neil to slacken the speed of the automobile, even though it was impossible to see ahead.

As to Paul's right to recover, the court instructed the jury that Paul could be guilty of contributory negligence even though he was not driving the car, if he failed to act as a reasonably prudent person would under the circumstances by way of warning or other action which might affect Neil's driving. The jury was told that if it found that Paul was guilty of negligence which contributed to his injuries, he could not recover. The jury was also instructed that if two people riding in an automobile are engaged in a joint enterprise or joint adventure so that they have a common purpose for the trip, and both share or have the right to share in driving, directing, controlling and governing the movements of the automobile, the negligence of the driver, if any, is the negligence of the one riding with the driver. These instructions were objected to upon the ground that there was no evidence of contributory negligence by Paul or of a joint enterprise or joint purpose on the part of Neil and Paul sufficient to create an issue for the jury. Further objection was made to the joint enterprise or joint purpose instruction upon the ground that it was not pleaded as a defense to the action.

■ It is a well-settled rule in Colorado that a passenger, who has no control or right of control over the driver of the automobile in which he is riding and who is injured by the negligence of another motorist and the contributory negligence of the driver, can recover from the motorist, and the driver's contributory negligence is not imputable to the passenger. Moore v. Skiles, Colo., 274 P.2d 311; Parker v. Ullom, 84 Colo. 433, 271 P. 187; Campion v. Eakle, 79

1. The Colorado Statutes provide that all road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least one hundred feet ahead. Colo.Rev.St., 1953, Ch. 13, Art. 4, Sec. 98(4).

Colo. 320, 246 P. 280, 47 A.L.R. 289; Colorado & Southern Railway Co. v. Thomas, 33 Colo. 517, 81 P. 801, 70 L.R.A. 681.

■ There is some ambiguity in the Colorado authorities as to when a guest or passenger riding in an automobile has a duty to observe and warn the driver of impending danger, and to protest against reckless and dangerous driving.[2] The law fixes no definite standards for determining the duty of a guest or passenger riding in an automobile, but when impending danger is known or obvious, the guest or passenger has a duty to act as a reasonably prudent person would act under like circumstances to avoid injury. If he fails to do so, he cannot recover for injuries resulting from an accident. Whether he has so acted is a jury question. In Ling v. Pease, 123 Colo. 518, 232 P.2d 189, 190, it was said:

"It is not questioned that there is a duty on the part of an invited guest to warn the driver of an automobile of known impending danger and protest against driving in a reckless and dangerous manner to the extent that a reasonably prudent person would do under like circumstances, and also that if he fails to do so, he is precluded from recovery for injuries resulting from an accident."

United Brotherhood of Carpenters and Joiners of America v. Salter, 114 Colo. 513, 167 P.2d 954; Wilson v. Hill, 103 Colo. 409, 86 P.2d 1084; Carlson v. Millisack, 82 Colo. 491, 261 P. 657; Janeskie v. Kaib, 76 Colo. 148, 230 P. 392; 5 Am.Jur., Automobiles, Secs. 478, 479; Annotation 63 A.L.R. 1432. In the instant case, Paul was sitting with the driver. The lights from the oncoming traffic together with the rain and the glare from the wet pavement, blinded both Paul and the driver. Paul knew that visibility ahead was cut to ten or fifteen feet when they met the bright lights of the oncoming traffic. The truck obstructed the bright lights and he was able to see the truck ahead when Neil could not, and yet he gave no warning. Under these circumstances, an issue was raised and was properly submitted to the jury as to whether Paul acted as a reasonably prudent person in not protesting or in failing to warn Neil that the truck was ahead.

■ The instruction upon joint enterprise or joint purpose correctly stated the law and was appropriate. In order to establish a joint enterprise from which the negligence of the driver of an automobile is the negligence of the passenger, it must appear that there was a common purpose and interest in the use of the automobile and that the parties had an equal right to exercise control over the use of the automobile, or that there were circumstances from which an inference could be drawn that the passenger had the right to exercise such control. Parker v. Ullom, supra; Boyd v. Close, 82 Colo. 150, 257 P. 1079; Moore v. Skiles, supra; 5 Am.Jur., Automobiles, Sec. 500, 501; Annotation 80 A.L.R. 312. In Moore v. Skiles, supra, the driver and passenger were joint owners of the automobile. In holding that the negligence of the driver was imputable to the passenger, the court said [274 P.2d 315]:

"We recognize that the authorities are divided on the question of imputability of negligence of the driver to a non-driving passenger in the automobile. We, however, believe that the more

---

2. In Hedges v. Mitchell, 69 Colo. 285, 194 P. 620, 621, it was said:

"It is contended that some duty devolved upon plaintiff (a passenger on the rear seat of defendant's automobile) to warn and guide defendant as to his route of travel, his speed, etc., and that neglect to discharge that duty constituted such contributory negligence as to defeat recovery. If such be the law, the in-

structions given were ample. But a duty to give such advice implies a duty to heed it, and the rear seat driver is responsible for enough accidents as the score stands without the aid of judicial precedent. The place for a passenger who knows better than the driver of a car when, where, and how it should be operated is at the wheel." See also Campion v. Eakle, supra.

reasonable and common sense view is that the owner or joint owner, riding as an occupant in his own car, using the car for a purpose in common with the driver is presumed to have a right to control the driver and a right to manage and direct the movements of the car. Whether the husband's driving of the vehicle was at the husband's or wife's request, or by agreement between them, or by his assuming the wheel and she silently acquiescing, makes no difference."

In Boyd v. Close, supra, Dennis Phillips used a family car to drive to a dance. Dennis drove the car to the dance, but on the return trip, Close was permitted to drive and a collision occurred with another car due to Close's negligence. Speaking about the question of joint enterprise, the court said [82 Colo. 150, 257 P. 1081]:

"If there is such a thing as a joint enterprise in relation to the use of an automobile we think this is it. These two boys, in conformity to the desire of each, took a particular car for a particular trip and shared between them the duty of driver. Plaintiff's motion to amend should have been sustained. Howard v. Zimmerman, 120 Kan. 77, 242 P. [131] 132."

The fact that Close was driving was an important factor in determining the joint purpose of the trip, but it was not controlling.

[redacted] It is true that Paul did not drive the automobile, and the record does not disclose that he exercised any control over its operation. He and Neil, however, did take their brother's automobile for the joint purpose of attending the National Guard meeting. One had as much right as the other to use it and to drive it. Each was equal in his right to control the method and design of the common purpose of getting to the meeting. Paul was not a guest of Neil in the automobile. They were jointly in possession of it, and joint control may be inferred. The rationale of the Skiles and Close cases is applicable. The fact that the boys may have intended to deliver the Plymouth to their brother Marvin, in Ft. Morgan, was immaterial.

Chapter 13, Article 4, Section 72, Colorado Revised Statutes, 1953, provides:

"Parking outside of business or residence.—(1) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway.

"(2) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

[redacted] The appellants contend that the court erred in refusing to include this statute in its instructions. The court did instruct the jury that the Colorado Statutes provide that a signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning, regardless of the weather, and that no person shall stop or suddenly decrease the speed of the vehicle without giving an appropriate signal in the manner provided by the statute. Article 4, Chapter 13, Section 49. The evidence is uncontradicted that the truck driver intended to make a left-hand turn for the purpose of entering the service station. The truck driver testified that he had slowed

down preparatory to making a left-hand turn after the oncoming traffic had passed; that he had not stopped; and that he had activated the mechanical signals on the truck indicating a left-hand turn. A witness who observed the truck from the service station window thought the truck had stopped, but was not certain. Paul testified that it had stopped before the collision. Assuming that the truck had come to a complete stop for the purpose of making a left-hand turn when traffic permitted, it seems quite obvious that the section relating to stopping, parking, or leaving standing of a vehicle on the highway was not intended to cover the situation presented by this case. If it were, a stopping for any cause might be a violation. We do not say that a momentary stop might not under some conditions constitute a violation of the statute, but we think in this case the condition of the traffic was such that the truck driver had the right to slow down, and even to stop, prior to making the left-hand turn, provided he gave the statutory signals. Dromey v. Inter State Motor Freight Service, 7 Cir., 121 F.2d 361. The court gave an instruction which was admittedly a correct statement of the law of unavoidable accident.[3] The appellants objected to the instruction on the grounds that the evidence showed that the defendant "was at all times able to avoid the accident and that in that respect the accident was not unavoidable". The truck driver maintained that he was operating the truck in a lawful and careful manner. He had the legal right to slow down preparatory to making a left-hand turn after giving proper signals. The appellants admit that they did not stop their automobile before the collision but contend that it was not their fault because they were unable to see the truck ahead. The evidence is

such that an inference could be drawn to the effect that the accident occurred through no fault of either party, and the defendants were entitled to have this theory of law submitted to the jury. Union Pacific Railroad Co. v. Shupe, Colo., 280 P.2d 1115; Ridley v. Young, 127 Colo. 46, 253 P.2d 433; Iacino v. Brown, 121 Colo. 450, 217 P.2d 266.

Affirmed.

3. The court gave the following instruction:
"You are instructed that an unavoidable accident is such an occurrence as, under all the circumstances, could not have been foreseen, anticipated or avoided in the exercise of ordinary and rea-

sonable care. And, of course, if you find that this collision in that sense was unavoidable in the sense I have given to recovery; that is, if it weren't due to anyone's negligence at all, but was unavoidable, why, then there could be no you."