**WESTERN DISTRIBUTING COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 7200.

United States Court of Appeals
Tenth Circuit.

June 21, 1963.

Victor F. Crepeau, Denver, Colo.
(Donaldson, Hoffman & Goldstein, Denver, Colo., on the brief), for appellant.

Merle R. Knous, Asst. U. S. Atty.
(Lawrence M. Henry, U. S. Atty., on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant, Western Distributing Company (Western), instituted this action in the court below against the United States to recover damages under the Federal Tort Claims Act.[1] The United States answered and counterclaimed. Upon trial to the court, recovery was denied upon both the complaint and the counterclaim. Western then appealed from that part of the judgment denying it recovery upon its complaint.

In substance, appellant urges two points for reversal, (1) the inadequacy of the trial court's findings of fact, and (2) the insufficiency of the evidence to support the findings of fact made by the trial court.

The litigation resulted from a collision of two vehicles, one belonging to Western and the other to the United States. Both vehicles, of the tractor-trailer type, were approximately 8 feet wide from front to rear. Western's vehicle was approximately 50 feet long and the military vehicle about 42 feet long. The collision occurred about dusk near the west end of a narrow bridge on U. S. Highway 24, about one mile east of Vona, Colorado. Western's vehicle was being driven by its employee, Lewis, and the government vehicle was driven by a member of the Armed Forces, one Stroud. Western's vehicle approached the bridge from the west traveling east and the government vehicle approached from the east traveling west. The government vehicle came onto the bridge first and had nearly traveled the length of the bridge at the time of the collision. The traveled portion of the bridge is 140 feet long and 20⅓ feet wide, with rails set in a concrete base 30 inches high on each side. The evidence shows the impact between the vehicles was of a side-swip-

---

1. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671–2680.

ing nature and therefore the exact point of impact could not be determined. The highway patrolman concluded that the impact was in the eastbound lane and Stroud so testified, but Lewis denied his vehicle was straddling the center line.

Certain other physical facts as they appeared after the accident are important. After the collision, there were tire marks for a distance of four or five feet, along the inside of the concrete rail base on the south side at the extreme west end of the bridge. There is little or no question but that those marks were made by the right front tire of Western's vehicle immediately upon entering the bridge. Then commencing a short distance east of those marks were tire skid marks beginning about 1 foot north of the south side of the bridge and running generally in a northeasterly direction for a distance of about 94 feet, where, again, tire marks along the concrete rail base on the north side of the bridge appear and run east about 38 feet to the east end of the bridge. The evidence shows that the skid marks continued to the point where Western's vehicle came to rest. Without question, all of these tire marks were made by the tires on Western's vehicle.

The approach to the bridge from the west was a downgrade running straight to the bridge. The approach from the east was downgrade, also, but on a curve coming in to the entrance to the bridge. "Narrow bridge" road signs were posted on the right side of the highway both east and west of the bridge. The testimony as to the speed of the vehicles varied. As to Western's vehicle it was from 40 to 50 miles per hour and as to the military vehicle it was 35 or 40 miles per hour. The headlights and clearance lights on both trucks were on, but there was a conflict in the evidence as to whether the clearance lights on the military vehicle were on dim or bright. After the collision, Western's vehicle continued on its course across the bridge as indicated by the tire marks, and at the east end of the bridge collided with another vehicle and came to rest on the north side of the road just east of the bridge. The tractor portion remained on its wheels but the trailer overturned. The government vehicle continued across the bridge, in its own lane of traffic, and stopped on the highway 40 or 50 yards west of the bridge. There was no front end damage to the military vehicle. All of the damage to that vehicle was to the left side beginning at the rear of the left front fender, with the rear view mirror, the running board, the side fuel tank, the front drive wheel, and the left side of the trailer also showing damage after the collision. Examination of Western's vehicle after the accident showed heavy damage to the left front of the tractor including the bumper, left front wheel and fender. The left side of the cab and the trailer were also damaged, and the left front tire was flat.

The findings of fact made by the able trial judge may be summarized as follows: Western's driver was guilty of negligence in approaching a narrow bridge at 45 miles per hour with a load of 70,000 pounds; he did not have his vehicle under control; he was driving at an excessive rate of speed and, as a result of such excessive speed and his vehicle being out of control, he scraped the side of the bridge immediately upon his approach to it causing the vehicle to bounce into the military vehicle; and his negligence was a proximate cause of the collision. He also found the driver of the military vehicle guilty of negligence, in that he was either over or crowding the center line of the bridge so close that he did not use due care; he did not have his vehicle under proper control; and his negligence was a proximate cause of the collision.

■ Appellant first argues that there is no evidence to support the court's finding that its vehicle was not under control as it approached the west end of the bridge. We do not agree. There is ample evidence in the record to support the finding. It may very well be concluded that the size and weight of the loaded vehicle, the fact it was ap-

proaching a narrow bridge coming down a grade, the knowledge on the part of the driver that there was traffic coming from the opposite direction, the poor visibility, because of the time of day, and the admitted speed of the vehicle, caused the driver to hit the south side of the railing base upon entering the bridge. Certainly such an inference is justified from this evidence. It may also be concluded that if the driver would have had his vehicle under control, it would not have hit the bridge. The trial court undoubtedly put stress upon this incident. From the physical facts, it may also be concluded that the vehicle remained out of control until it came to rest, east of the bridge after colliding with two other vehicles. Furthermore, the Colorado statute as to the speed of vehicles upon the highways of that state[2] provides that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." And, the Colorado Supreme Court has held that the determination of excessive speed in a particular case is a question of fact to be determined by the trier of fact from all of the circumstances of the case.[3] The trial judge, with the facts of this case before him, properly made such a determination, and concluded Western's vehicle was being driven at an excessive rate of speed.[4] Under the law and the facts of the case, we certainly cannot say that the quoted findings of the trial court are clearly erroneous, which we would have to do in order for appellant to prevail.[5]

■ Appellant further urges that the evidence was uncontradicted to the effect that the government's vehicle was not properly lighted and was traveling partially on the wrong side of the highway. An examination of the record discloses that there was a conflict in the evidence as to both questions. The government's driver, upon cross-examination, denied that as he came down the hill onto the bridge his vehicle swung wide and straddled the middle line. The government's evidence also showed the clearance lights on its vehicle, upon examination prior to the collision, were found to be working properly, and after the collision all of the lights were burning. However, conceding for the sake of argument that both contentions are correct, appellant still could not prevail unless it could be concluded that its driver was free from any negligence which was a proximate or contributing cause of the collision. In view of the trial court's findings, supported as they are by the evidence, and what we have said, it cannot be so concluded.

We think there is ample evidence to support the trial court's findings and clearly establish that the drivers of both vehicles involved in this accident were guilty of negligence. The judgment is therefore affirmed.

---

2. Colo.Rev.Stat.1953, § 13–4–33.

3. Weicker Transfer & Storage Co. v. Bedwell, 95 Colo. 280, 35 P.2d 1022; Carlson v. Millisack, 82 Colo. 491, 261 P. 657.

4. On this issue, the court specifically found, "Well, this truck was certainly out of control doing 45 miles an hour with its heavy cargo." At a later point in his findings, he also stated, "The Plaintiff's driver, going fast and out of control, saw that he had such a narrow space there between Defendant's truck and the railing that he did pull over and acci-

dentally, as far as that was concerned, but actually caused by his negligent excessive speed and lack of control scraped the railing on his right side and bounced into Defendant's truck. * * * As it happened, I think both sides were negligent. Negligence of each proximately cause caused or contributed to this accident."

5. F.R.Civ.P. 52(a), 28 U.S.C.A.; C. B. Chittim v. Texas Pacific Coal and Oil Company, 10 Cir., 317 F.2d 81; Continental Materials Corp. v. Gaddis Mining Co., 10 Cir., 306 F.2d 952; Maragakis v. United States, 10 Cir., 172 F.2d 393.